IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID L. ROOKS,

      Plaintiff,

v.                                                                              No. CV 17-929 CG

NANCY A. BERRYHILL, Deputy Commissioner
Of Operations for the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff David L. Rooks' *Motion to Reverse and Remand for Rehearing, with Supporting Memorandum* (the "Motion"), (Doc. 17), filed March 7, 2018; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 19), filed May 2, 2018; and Plaintiff's *Reply to Brief in Response to Motion to Reverse and Remand* (the "Reply"), (Doc. 20), filed May 22, 2018.

Mr. Rooks applied for disability insurance benefits ("DIB") on June 12, 2013, alleging disability beginning July 20, 2010. (Administrative Record "AR" 244-45). Mr. Rooks' claim was denied initially on October 2, 2013, (AR 109-114), and upon reconsideration on December 27, 2013, (AR 116-24). Mr. Rooks requested a hearing before an administrative law judge ("ALJ"), (AR 140-41), which was granted, and a hearing was held on March 3, 2015, before ALJ Dana E. McDonald. (AR 39-80). Mr. Rooks appeared and testified at the hearing along with an impartial vocational expert ("VE"), Troy Scott. (AR 39). Mr. Rooks was represented at the hearing by Lina Seikh, an attorney, (*id.*), and Andrew S. Youngman, a non-attorney representative, filed a pre-

hearing memorandum on Mr. Rooks' behalf, (AR 181-89). Mr. Youngman also filed a post-hearing brief on Mr. Rooks' behalf (AR 194-99), prompting a supplemental hearing held on August 6, 2015, (AR 81-108). Mr. Rooks appeared and testified at the supplemental hearing along with a different VE, Luis O. Mas. (AR 81). Mr. Rooks was represented at the supplemental hearing by Rachel Slocombe, an attorney. *Id*.

On February 19, 2016, ALJ McDonald issued a decision finding Mr. Rooks not disabled at any time between his alleged onset date and his date last insured. (AR 33). Mr. Rooks requested review by the Appeals Council, (AR 13-14), which was denied, (AR 1-4), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Through new counsel, Francesca MacDowell, Mr. Rooks has appealed the ALJ's decision, arguing the ALJ erred by failing to follow the correct legal standards or support her decision with substantial evidence. (Doc. 17). The Court has read the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the Administrative Record. Because the ALJ failed to support her decision with substantial evidence, the Court finds Mr. Rooks' Motion is well-taken and should be **GRANTED** and the case **REMANDED** for further proceedings.

    **I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). If substantial evidence supports the Commissioner's findings and the correct

legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The ALJ's failure to apply the correct legal standards or demonstrate that he has done so is grounds for reversal. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley,* 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

3

## II. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. § 404.905(a), 416.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.920; 416.1520.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.920(a)(4)(i-iv), 416.1520(a)(4)(i-iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ proceeds to step five of the evaluation process, where the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III. Background

Mr. Rooks filed for DIB on June 12, 2013, alleging numbness and weakness in his hands, chronic lower back pain, high blood pressure, a bulging disc in his lower

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

back, and chronic knee pain limited his ability to work beginning July 20, 2010. (AR 109-10, 116-17). At step one, the ALJ determined Mr. Rooks had not engaged in substantial gainful activity between his alleged disability onset date through June 30, 2013, the date he was last insured. (AR 26). At step two, the ALJ found Mr. Rooks has the following severe impairments: degenerative disc disease, bilateral knee osteoarthritis, lumbar compression fraction, lumbar spondylosis with myelopathy, facet arthropathy, muscle spasms, neuralgia, radiculitis, carpal tunnel syndrome, and morbid obesity. (AR 26). At step three, the ALJ concluded none of Mr. Rooks' impairments, whether alone or in combination, met or medically equaled a Listed impairment. (AR 27).

At step four, the ALJ found Mr. Rooks has the RFC to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), in that Mr. Rooks can perform light work as long as he has the opportunity to alternate between sitting and standing at will throughout the workday. (AR 27). Turning to the evidence, the ALJ began by discussing Mr. Rooks' statements. Mr. Rooks testified that he stopped working in July 2010 after he had been fired for missing too much work due to back pain. (AR 28). Mr. Rooks stated that he was involved in an automobile accident in August 2011, which worsened his pain. *Id.*

Mr. Rooks testified he could walk for about 25 minutes, sit for about 30 minutes, stand still for about 15 minutes at a time, and lift up to 40 pounds, just not consistently. *Id.* During his period of disability, Mr. Rooks lived with his girlfriend for a time and was able to care for his own hygiene without assistance. *Id.* Mr. Rooks stated he could attempt chores but would have to rest, and he spent most of the day lying down with a

5

heating pad. *Id.* Finally, Mr. Rooks drove until around April 2013, when his license was suspended. *Id.*

After discussing this testimony, the ALJ concluded that Mr. Rooks' allegations concerning the intensity, persistence, and limiting effects of his symptoms were "less than credible." *Id.* The ALJ found that Mr. Rooks' allegations of disabling pain were "inconsistent with the objective medical evidence, which indicates an attempt by the claimant to exaggerate the severity of his symptoms." *Id.* The ALJ did not specify what objective medical evidence indicated Mr. Rooks was exaggerating his symptoms. Rather, the next thing the ALJ discussed was Mr. Rooks' testimony regarding his ability to drive, take care of personal needs, and coach youth football prior to his automobile accident. *Id.* The ALJ determined those activities were consistent with a limitation to light work with the option to sit and stand at will. *Id.*

Regarding objective medical evidence, the ALJ stated images of Mr. Rooks' knees showed only mild bilateral degenerative joint disease, and an MRI showed degenerative disc disease in Mr. Rooks' lower back. (AR 29). The ALJ stated Mr. Rooks' knee impairments were found to be severe given surgeries performed on them. *Id.* The ALJ found a limitation to light work with a sit/stand at will option was consistent with the objective evidence. *Id.*

The ALJ then discussed Mr. Rooks' medical records between his alleged disability onset date, July 20, 2010, and his date last insured, June 30, 2013. (AR 29). The ALJ acknowledged that the record contained evidence from after June 2013 and stated she considered it. *Id.* Still, the ALJ only summarized the records from Mr. Rooks' period of alleged disability, not from 2014 or 2015. (AR 29-31).

6

The ALJ noted that the state agency consultants, both at the initial and reconsideration levels, opined there was insufficient evidence in Mr. Rooks' application to determine whether or not he was disabled. (AR 29). According to the ALJ, Mr. Rooks submitted limited evidence in support of his application, and the evidence submitted did not support the degree or severity Mr. Rooks alleged. *Id.* For instance, Mr. Rooks' pain "appeared sufficiently controlled with pain medication," and the ALJ found his treatment records "indicate [Mr. Rooks'] symptoms were stable." *Id.*

Ultimately, the ALJ gave limited weight to the consultants' opinions that there was insufficient evidence to determine whether or not Mr. Rooks was disabled. (AR 31). The ALJ stated that there was sufficient evidence in the information Mr. Rooks submitted after the consultants formed their opinions in October and December 2013. *Id.* The ALJ found that the subsequent evidence supported a limitation to light work with a sit/stand at will option. *Id.*

The ALJ proceeded to step four and found that given Mr. Rooks' age, experience, education, and RFC, he could not perform his past relevant work. (AR 31-32). However, the VE testified that someone with Mr. Rooks' background and RFC could perform the jobs of ticket taker, swatch clerk, and cashier. (AR 33). The ALJ accepted that testimony and found that Mr. Rooks could perform jobs in significant numbers in the national economy. *Id.* Accordingly, the ALJ found that Mr. Rooks was not disabled at any time between his alleged disability onset date through the date he was last insured. *Id.*

**IV. Analysis**

Mr. Rooks first argues the ALJ did not support the RFC with substantial evidence. In particular, Mr. Rooks argues the ALJ erred in part by failing to develop the record regarding Mr. Rooks' nonexertional impairments and determine Mr. Rooks' credibility. (Doc. 17 at 1). Mr. Rooks also argues the ALJ's errors in formulating the RFC tainted the VE's testimony and the ALJ's findings at step five. *Id.* at 2. Defendant counters generally that the ALJ followed the correct legal rules and supported the RFC with substantial evidence, and that Mr. Rooks is asking the Court to reweigh the evidence in his favor. (Doc. 19 at 5-14).

### A. *Whether the ALJ had a duty to develop the record*

First, Mr. Rooks argues the ALJ erred by not developing the record to obtain evidence regarding his chronic pain. (Doc. 17 at 11-13). Mr. Rooks notes that he was diagnosed with chronic pain syndrome and that the state agency physicians thought there was insufficient evidence to determine whether Mr. Rooks was disabled. *Id.* Therefore, Mr. Rooks states the ALJ had a duty to develop the record by ordering a consultative exam to explain the effect of Mr. Rooks' pain on his ability to work. *Id.* Defendant argues that, on the contrary, Mr. Rooks did not sufficiently raise the issue of his chronic pain, nor did the evidence trigger the ALJ's duty to order an exam. (Doc. 19 at 5-6).

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997); 20 C.F.R. § 404.1512(a). However, because social security disability proceedings are nonadversarial, "the ALJ is responsible in every case to ensure that an adequate record

is developed during the disability hearing consistent with the issues raised." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins*, 113 F.3d at 1164) (internal quotation marks omitted)). "Generally this means that the ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Id.* (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1993)).

Developing the record may require ordering a consultative exam, though the ALJ has "broad latitude" in deciding whether to do so. *Hawkins*, 113 F.3d at 1166. A consultative exam is unnecessary when the ALJ "has enough information to make a disability determination." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). On the other hand, consultative exams "are often required" when the evidence is inconclusive, there is a direct conflict in the evidence, or where additional tests are necessary to explain a diagnosis in the record. *Hawkins*, 113 F.3d at 1166.

In order to obtain a consultative exam, claimants must cite "evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* at 1167. "Further, when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored." *Id.* If counsel does not request a consultative exam, courts "will not impose a duty on the ALJ to order a consultative exam unless the need for one is clearly established in the record. *Id.* at 1168.

When he applied for DIB, Mr. Rooks alleged that numbness and weakness in his hands, high blood pressure, a bulging disc in his lower back, and chronic back and knee

9

pain prevented him from working. (AR 109-10, 116-17). State agency physicians at the initial and reconsideration levels examined Mr. Rooks' medical records and opined there was insufficient evidence to determine whether Mr. Rooks was disabled. (AR 112-14, 120-22). These determinations were dated October 2013 and December 2013, respectively. (AR 114, 122).

In a prehearing brief, a non-attorney representative argued that, based on his medical records from February 2010 to July 2013, Mr. Rooks could not perform his past relevant work or any work in the national economy. (AR 181-187). Mr. Rooks' representative highlighted Mr. Rooks' pain as preventing him from sustaining any work whatsoever. (AR 184-87). In a supplemental brief, Mr. Rooks' representative argued that new medical evidence submitted from 2014-2015 provided further support that Mr. Rooks was incapable of sustaining any work. (AR 339-41). Finally, Mr. Rooks was represented at the hearing by an attorney, who raised the issue of Mr. Rooks' chronic pain, (AR 44-46), and Mr. Rooks testified regarding his pain and how it affected his ability to work, (AR 51, 63).

In her decision, the ALJ did not find that Mr. Rooks' chronic pain constituted a severe impairment. (AR 26). The ALJ also did not limit Mr. Rooks' RFC in consideration of his pain. (AR 27). Rather, the ALJ found Mr. Rooks' allegations of disabling pain inconsistent with the objective medical evidence, which the ALJ thought showed Mr. Rooks exaggerated his complaints of pain. (AR 28). The ALJ did not cite specific evidence but did summarize the medical evidence from 2010 through 2013. (AR 28-31). Although the state agency physicians thought the record from 2010-2013 was insufficient to determine if Mr. Rooks was disabled, the ALJ gave their opinions "limited

weight." (AR 31). The ALJ instead found that the evidence submitted after their determinations were made–that is, the evidence from 2014-2015–was sufficient to determine Mr. Rooks' disability. *Id.* The ALJ did not summarize or analyze any of the 2014-2015 evidence.

Viewing the record as a whole, Mr. Rooks raised the issue of his chronic pain beginning with his application, where he alleged chronic back and knee pain limited his ability to work. (AR 109-10, 116-17). Although they did not request a consultative exam, Mr. Rooks' representatives emphasized Mr. Rooks' pain in a prehearing brief, supplemental brief, and in questioning at the hearing. *See* (AR 44-46, 181-187, 339-41). Mr. Rooks has therefore carried his burden of raising the issue of his chronic pain and citing sufficient evidence to reasonably believe his pain was a significant impairment. *Hawkins*, 113 F.3d at 1166. Further, both the initial and reconsideration level physicians stated that there was insufficient evidence to determine whether Mr. Rooks was disabled. (AR 112-14, 120-22). Because both of the state agency physicians opined there was insufficient evidence, the Court finds that the record clearly shows the evidence was inconclusive and a consultative examination was necessary. *Id.* at 1168.

Despite Mr. Rooks' allegations and the state agency physicians' opinions that further information was necessary, the ALJ declined to order a consultative exam. Instead, the ALJ found that the 2014-2015 records were sufficient to determine the extent of Mr. Rooks' disability. The ALJ, however, did not discuss or analyze the 2014-2015 evidence. As discussed, substantial evidence is "relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). While the ALJ was not required to discuss all of

11

the evidence, she was required to discuss at least the uncontroverted evidence she chose not to rely on, significantly probative evidence she rejected, and the evidence supporting her decision. *Id.* (stating ALJs must discuss contrary evidence "in addition to discussing the evidence supporting his decision"). By failing to support her decision with any discussion of the 2014-2015 evidence, the ALJ's decision not to develop the record is not supported by substantial evidence.

Notably, Defendant does not attempt to defend the ALJ's reasoning. Defendant instead emphasizes that Mr. Rooks' representatives did not request a consultative exam. (Doc. 19 at 5). Defendant is correct that if a claimant is represented by counsel, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1168. But, as discussed, if the need for a consultative examination "is clearly established in the record," the ALJ has a duty to order a consultative exam even if claimant's counsel does not request one. *See id.*; *Henrie v. U.S. Dep't. of Health and Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (stating ALJ has a "basic obligation . . . to ensure that an adequate record is developed," even if a claimant is represented). The need for a consultative exam was clearly established by the state agency physicians agreeing that there was insufficient evidence to adjudicate Mr. Rooks' claim, whether or not Mr. Rooks' representatives thought so. The Court therefore finds that the ALJ erred by not ordering a consultative exam or supporting her decision not to with substantial evidence.

### B. Whether the ALJ erred in finding Mr. Rooks not credible

Mr. Rooks also asserts the ALJ erred in determining Mr. Rooks' credibility. (Doc. 17 at 15-24). Mr. Rooks argues the ALJ failed to follow the legal rules regarding

credibility analysis and failed to support her determination with substantial evidence. *Id.* Defendant responds that the ALJ reasonably weighed Mr. Rooks' statements against the objective medical evidence, his treatment, and his activities of daily living, in deciding he was not credible. (Doc. 19 at 6-11).

To determine a claimant's RFC, the ALJ must consider the credibility of the claimant's subjective testimony about his pain, symptoms, and their effect on his ability to work. *See Madron v. Astrue*, 311 Fed. Appx. 170, 175 (10th Cir. 2009) (unpublished) (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *6 (July 2, 1996)).[2] "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (brackets, citation, and internal quotation marks omitted)).

The Social Security Regulations set out the proper two-step analysis of a claimant's subjective testimony. *See* SSR 96-7p, 1996 WL 374186, at *2. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* Second, where the ALJ finds that there is such an underlying physical or mental impairment(s), she must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* In doing

---

2 SSR 96-7P has been superseded by SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017). However, as the parties recognize, SSR 96-7P was still in effect on the date of the ALJ's decision and therefore governs the Court's analysis. *See* (Doc. 17 at 15, n.5); (Doc. 19 at 6, n.4).

so, the ALJ may make a finding on the credibility of a claimant's statements regarding their symptoms based on the entire case record. *Id.*

As part of the two-step analysis, the ALJ must consider certain criteria in addition to the medical evidence in the record. 20 C.F.R. § 404.1529(c). These "credibility factors" include: (i) a claimant's daily activities; (ii) the location, duration, frequency, and intensity of a claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of those symptoms; (vi) any measures taken to relieve the pain or other symptoms; and (vii) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at § 404.1529(c)(3). A formal factor-by-factor review of the evidence is not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," the credibility determination is adequately supported. *Id.*

In this case, the ALJ stated she considered the evidence of record and found Mr. Rooks' statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 29). The ALJ found Mr. Rooks' statements "inconsistent with the objective medical evidence, which indicates an attempt by the claimant to exaggerate the severity of his symptoms." (AR 28). The ALJ proceeded to summarize Mr. Rooks' treatment and medical records from 2010-2013, but she did not highlight any evidence showing Mr. Rooks exaggerated or embellished his complaints of pain. (AR 29-31). Indeed, as the ALJ noted, the objective medical evidence

14

throughout the relevant period shows Mr. Rooks had: degenerative joint disease; degenerative disc disease; impaired gait; bilateral knee tenderness; decreased range of motion in his legs and back; dehydrated discs; both positive and negative straight leg tests; and chronic pain syndrome. *Id*.

The Court recognizes that credibility findings are the ALJ's responsibility and should not be disturbed "[s]o long as the ALJ sets forth the specific evidence he relies on." *Qualls*, 206 F.3d at 1372. However, the ALJ did not set forth what objective evidence Mr. Rooks' testimony was inconsistent with or cite anywhere in the record where Mr. Rooks was found to be exaggerating his symptoms. This suggests the ALJ decided herself that Mr. Rooks embellished his complaints of pain and rendered "a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144. Further, because the ALJ did not cite any evidence as inconsistent with Mr. Rooks' statements, the Court can only "guess what evidence the ALJ relied on in evaluating [Mr. Rooks'] credibility." *Qualls*, 206 F.3d at 1372. The Court therefore finds that the ALJ failed to follow the correct legal standards or support her credibility finding with substantial evidence.

Defendant argues the ALJ permissibly considered the lack of objective evidence supporting Mr. Rooks' statements, Mr. Rooks' treatment, and Mr. Rooks' activities of daily living in making the credibility finding. (Doc. 19 at 7-11). First, as discussed, the ALJ did not tie her conclusion to any objective evidence. Although the ALJ may consider the objective support for a claimant's statements, she was required "closely and affirmatively" link her findings to substantial evidence, which she did not do. *Wilson*, 602 F.3d at 1144.

Second, the ALJ did not cite Mr. Rooks' treatment or his activities of daily living as reasons to discredit his testimony. Compounding this problem, Defendant cites evidence from 2014 as substantial evidence in favor of the ALJ's determination. (Doc. 19 at 10). As discussed above, the ALJ did not discuss evidence from after June 2013, when Mr. Rooks was last insured. (AR 30). Defendant's arguments are therefore improper post-hoc rationalizations of the ALJ's decision, and the Court may not affirm on these grounds. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (holding courts may not "create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). For the foregoing reasons, Defendant's counterarguments are unavailing and do not show that the ALJ followed the correct legal rule or supported her decision with substantial evidence.

V. **Conclusion**

Based on the foregoing reasons, the Court finds that the ALJ failed to follow the correct legal rules or support the RFC determination with substantial evidence. The ALJ also failed to follow the correct legal rules for determining credibility or support the credibility finding with substantial evidence. The Court declines to reach Mr. Rooks' other arguments as they may be mooted on rehearing.

**IT IS THEREFORE ORDERED** that Mr. Rooks' *Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum*, (Doc. 21), is **GRANTED** and the case **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE